IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATE KOVAL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. 16-cv-08449 |
| v. | ) | |
| | ) | Hon. John J. Tharp |
| HARRIS & HARRIS, LTD., | ) | |
| | ) | Magistrate Judge David Weisman |
| DEFENDANT. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Now comes Plaintiff, Kate Koval, by and through her attorneys, and for her Response to

Defendant's Motion to Dismiss, states as follows:

**INTRODUCTION**

Defendant Harris & Harris, LTD ("Harris") seeks to dismiss this action pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming that Plaintiff lacks standing, as

she has not asserted her claims in her representative capacity, and that the collection letter at

issue does not violate the FDCPA because it does not threaten legal action as a matter of law and

Plaintiff's EFTA claim does not apply to Harris. (Dkt. #18, Defendant's Memorandum in

Support of Defendant's Motion to Dismiss, pp. 1-2).

First, Defendant brings a 12(b)(1) motion, claiming that Plaintiff lacks standing in her

individual capacity because she does not stand in the shoes of her father, the debtor. (Dkt. #18, p.

3). Defendant next argues that its collection letter that states it "may exercise their various

options to enforce collection" does not constitute a threat of legal action under § 1692e(5)

because the letter was not sent by an attorney or on an attorney's letterhead, it makes no specific

mention of litigation, and "makes clear that no decision regarding legal action has been made, no

action has been taken and none is imminent." (Dkt. #18, pp. 5-6). Finally, Defendant claims that

1

it did not misstate the law with respect to the EFTA because the EFTA, as cited in Plaintiff's

Complaint, is "obsolete" and does not apply to debt collectors, like Defendant Harris. (Dkt. #18,

p. 9).

As will be shown below, Plaintiff has made facially plausible claims necessary to

withstand the Motion to Dismiss, and respectfully requests that Defendant Harris's Motion to

Dismiss be denied.

## STANDARD

In order for a plaintiff's case to survive a 12(b)(1) motion challenging standing, "a

plaintiff need only show the existence of facts that could, consistent with the complaint's

allegations, establish standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F. 3d 440, 443

(7th Cir. 2009). *See also Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130 (1992); *Lac Du*

*Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F. 3d 490, 495 (7th Cir.

2005). A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case.

*See Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to

dismiss, the court construes all facts alleged in the complaint and any reasonable inferences

drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate*

*Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Capitol Leasing Co. v. FDIC,* 999 F.2d

188, 191 (7th Cir. 1993). Documents which are referred to in a complaint and are central to a

claim, as well as any matters of public record, may be considered on a motion to dismiss. *See*

*Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir. 2002); *Henson v.*

*CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). To survive a motion to dismiss, a complaint

must contain sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009).

Dismissal is warranted only if the allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The complaint must: "(1) describe[] the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggest[] that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F. 3d 599, 601–02 (7th Cir. 2016) (citing *Bell Atlantic Corp.*, 550 U.S. at 555; 127 S. Ct. 1955).

The FDCPA "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009). Generally, whether a collection letter is deceptive or misleading raises a question of fact that should be left to the jury. *Grden v. Leikin Ingber & Winters, PC*, 643 F. 3d 169, 172 (6th Cir. 2011) (citing *Hartman v. Great Seneca Fin. Corp.*, 569 F. 3d 606, 613 (6th Cir. 2009)).

## ARGUMENT

**I.    Plaintiff Has Standing Under the FDCPA Because She Has a Special Relationship With the Addressed Consumer and Has the Same Authority to Open and Read Letters**

Defendant Harris claims that Plaintiff lacks standing to sue in her individual capacity because she "does not stand in the shoes of the debtor because she is not asserting the FDCPA claims on behalf of Michael Koval." (Dkt. #18, p. 3). However, not only is Plaintiff standing in the shoes of her father, but she need not bring her claims in a representative capacity.

As Defendant Harris concedes, the FDCPA's protections extend to not only the consumer, but those who "stand in the shoes" of the consumer. (Dkt. #18, p. 3) (citing *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F. 3d 938, 943 (7th Cir. 2011), *reh'g en banc denied*

3

(May 12, 2011) (citing *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F. 3d 647, 649-50 (6th Cir.

1994)). This means that a party has standing if they:

> **"have the same authority as the debtor to open and read the letters of the
> debtor. Otherwise, a debt collector's liability would depend on fortuities such
> as an alleged debtor's death. Such a result is inconsistent with the broad scope
> of the FDCPA. . . ."**

*Wright*, 22 F. 3d at 650. In addition, the Supreme Court has expressly recognized that

standing to sue extends to a person who stands in the shoes of an injured party. *Vt. Agency of*

*Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("the assignee of a claim has

standing to assert the injury in fact suffered by the assignor.").

Here, too, Plaintiff is legal guardian and standing in the shoes of her father, the addressed

consumer, and has the same authority to open and read his letters. She has a special relationship

with her father, and acts in his legal capacity, and thus, statements that would mislead the

consumer are not only directed at the addressed consumer, her father, but also Plaintiff herself.

*See, e.g. Wright.*; *see also Montgomery v. Huntington Bank, et al.*, 346 F. 3d 693, 697 (6th Cir.

2003) (finding plaintiff was not a consumer because he had not alleged in his complaint to be the

legal guardian of his mother or to be obligated or allegedly obligated to pay any debt); *see also*

*King v. IB Property Holdings Acquisition, et al.*, 635 F. Supp. 2d 651, 658 (E.D. Mich. June 26,

2009) (same); *see also Sibersky v. Goldstein, et al.*, 155 Fed. Appx. 10, 12 (2d Cir. 2005)

(finding a non-consumer under the FDCPA could also have standing if he can plead "some

injurious exposure to the communication"). Thus, the FDCPA is still protecting the consumer,

Michael Koval, through his guardian who has the authority to open and read his letters, Plaintiff.

The § 1692e violations involves the initial collection letter from Harris, addressed to

Michael Koval, which threatened litigation over a medical debt, when, in fact, Harris and the

original creditor do not sue on such debts, and had no intention of suing on the alleged debt, and

4

which misstated Plaintiff's rights under the EFTA. (Dkt. #1, Complaint, ¶¶ 27, 46). Harris made the threat in order to make the consumer fear a lawsuit, and coerce the consumer into paying the alleged debt. (Dkt. #1, Complaint, ¶¶ 23-24). Plaintiff, as legal guardian with the authority to open and read her father's letters, and the responsibility to make decisions on his behalf based on what is in the letters, was misled into believing that Harris would sue, even though it did not intend to take legal action. (Dkt. #1, Complaint, ¶ 20. Thus, the statement would not only mislead the consumer, to whom the letter was addressed, but also others standing in his shoes with the authority to read such a letter, such as Plaintiff.

Thus, Plaintiff, having a special relationship as daughter and legal guardian of her father, Michael Koval, the addressed consumer, has standing under the FDCPA. Defendant Harris concedes that a person who stands in the shoes of a consumer can bring suit under the FDCPA, and thus Defendant Harris's motion to dismiss should be denied.

## II.     Plaintiff Has Stated a Claim for Relief Because Defendant Has Implicitly Threatened the Initiation of Legal Action Without Any Intention To Do So

Section 1692e of the FDCPA prohibits a debt collector from using any false, or any deceptive or misleading representation or means in connection with the collection of a debt, including the threat to take an action not intended to be taken. *See* 15 U.S.C. § 1692e(5). A false representation can still lead to liability under § 1692e even if the act is unintentional. *Turner v. J.V.D.B. Assocs.*, 330 F. 3d 991, 998 (7th Cir. 2003); *Gearing v. Check Brokerage Corp.*, 233 F. 3d 469, 472 (7th Cir. 2000) (citing *Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)). Furthermore, proof of one violation is sufficient to support a plaintiff's claim under the FDCPA. *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990).

A false threat to take an action not intended to be taken requires two elements: (1) the unsophisticated consumer would believe that legal action was threatened; and (2) the debt collector did not intend to take legal action. *United States v. Nat'l Fin. Servs., Inc.*, 98 F. 3d 131 (4th Cir. 1996); *see Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343 (E.D.N.Y. 2009); *see also United States v. Nat'l Fin. Servs., Inc.*, 820 F. Supp. 228 (D. Md. 1993), *aff'd*, 98 F.3d 131 (4th Cir. 1996); *Degonzague v. Weiss, Neuren & Neuren*, 89 F. Supp. 2d 282 (N.D.N.Y. 2000).

Plaintiff's § 1692e(5) claim states that Defendant's collection letter falsely threatened to take legal action against Plaintiff without the intention to do so. (Dkt. #1, Complaint, ¶ 27). Defendant's collection letter states, in part, that "[i]f this debt is not paid, our client(s) may exercise their various options to *enforce* collection." *See* Collection Letter, attached to Plaintiff's Complaint as Exhibit F (emphasis added). Prior to this sentence, the letter also says, in large letters: "RESPOND IMMEDIATELY," and requests Plaintiff to "Please stop any further collection action that may be taken against you by paying this debt immediately."

### A. Defendant Harris Need Not Explicitly Use a "Trapping of Litigation" In Order for its Letter to Constitute a Threat Under Section 1692e(5)

Defendant Harris claims that its collection letter makes no mention of litigation, and "makes clear that no decision regarding legal action has been made, no action has been taken and none is imminent." (Dkt. #18, p. 6). Defendant further states that its letter "makes no reference whatsoever to any of the 'trappings of litigation' as defined in this Court's opinion in *Aker*," and that its generalized reference to collection efforts does not constitute a threat of legal action. (Dkt. #18, p. 8) (citing *Aker v. Bureaus Investment Group Portfolio No. 15 LLC*, 2014 WL 4815366 (N.D. Ill. Sept. 29, 2014, J. Tharp, Jr.). However, a threat of legal action under § 1692e(5) need not explicitly mention courts, attorneys or litigation costs.

6

Defendant Harris's collection letter distinctly uses the phrase "enforce collection." To "enforce" means "[t]o give force or effect to [a law, etc.], [or] to compel obedience to . . . to compel a person to pay damages for not complying with [a contract]." Enforce, Black's Law Dictionary (10th ed. 2014). Thus, the only legal method for enforcing collection of an unpaid debt is to file a lawsuit. "[I]ndirect or oblique statements" can constitute litigation threats if they imply that legal action is imminent or contemplated. *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998).

Defendant relies heavily on the finding in *Aker*, where it was determined that "references to taking 'such action as necessary to protect [the debt collector's] client' and to 'consider[ing] additional remedies' at unspecified times do not constitute a threat of litigation . . . there is no content to them other than a promise to continue collection efforts." 2014 WL 4815366 at *5. Unlike in *Aker*, Defendant's letter is not a mere promise to continue the same collection activity, but rather, in the absence of Plaintiff's payment, Defendant's client may exercise "various options to enforce collection," and initiate "further collection action." The letter in *Aker* also assured the consumer that "no attorney with this firm has personally reviewed . . . your account," and gave no deadline or impression of immediacy. *Id.* at *1. The collection letter, here, contains no such disclaimer. It further implies that there are avenues of collection and other various options of enforcement that Defendant Harris has not already exercised, but will imminently explore if Plaintiff does not immediately pay.

Courts have found language similar to the language in this case to constitute a threat of legal action. The implication that the creditor instructed the debt collector "to proceed with whatever legal means is necessary to enforce collection" implies to the consumer that a legal action was "authorized, likely and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F. 3d

7

60, 61-62 (2d Cir. 1993). "[V]ague threats of 'other remedies' or 'further steps' have been found to constitute an implied threat of legal action to the least sophisticated debtor." *Canlas v. Eskanos & Adler, P.C.*, No. C 05-00375 JF, 2005 WL 1630014, at *2 (N.D. Cal. July 6, 2005). *Canlas* determined that a warning that a payment from the consumer is necessary to avoid "further action" constituted a threat under § 1692e(5), distinguishing its letter, from the letter in *Wade*, where the consumer merely received a "prudential reminder" of the potential consequences of not paying the debt. *Id.* at *2-3 (citing *Wade v. Reg'l Credit Ass'n*, 87 F. 3d 1098 (9th Cir. 1996)). Here, Defendant Harris threatens "various options to enforce collection," and "further collection action" if Plaintiff does not pay immediately. These are not "prudential reminders" of the additional costs or consequences Plaintiff may incur, but rather, a clear threat that Defendant Harris is planning to take action against Plaintiff beyond the collection methods already employed. At this stage of the pleadings, there are several questions of fact that should be submitted to the finder of fact.

Even in the absence of determining whether a collection letter constituted a "threat," in *Brown v. Card Service Center*, the court nonetheless found the collection letter to be "deceptive under the FDCPA . . . to assert that it *could* take an action it had no intention of taking and has never or very rarely taken before." 464 F. 3d 540, 455 (3rd Cir. 2006) (emphasis in original). A collection letter "is deceptive 'where it reasonably can be read to have two or more different meanings, one of which is inaccurate.'" *Id.* (quoting *Wilson v. Quadramed Corp.*, 225 F. 3d 350, 354 (3rd Cir. 2000); *see also Clomon v. Jackson*, 988 F. 2d 1314, 1319 (2nd Cir. 1993).

Here, Plaintiff has alleged that Defendant Harris's client, MSRIC Rehab Institute of Chicago, does not sue consumers for medical debts. (Dkt. #1, Complaint, ¶¶ 21, 22). Defendant Harris's collection letter, urging Plaintiff's immediate payment or else its clients "may exercise

8

their various options to enforce collection," can reasonably be understood by the unsophisticated consumer to mean that a lawsuit could be filed against her. Thus, Defendant Harris, like in *Brown*, has deceptively implied that there was a possibility of a lawsuit when it knew its clients do not pursue lawsuits against consumers. Thus, even if Defendant Harris's collection letter does not constitute a threat, it is still deceptive on its face, in violation of 15 U.S.C. § 1692e.

> **B.      Defendant Harris's Decision to Pursue Legal Action Is Imminent, Though Imminence is Not Required**

Defendant Harris claims that because it makes no explicit reference to litigation and "makes clear that no decision regarding legal action has been made, no action has been taken and none is imminent," it has not made a threat under § 1692e(5). (Dkt. #18, p. 6). Imminence is not a required element of a § 1692e(5) claim. *See Nat'l Fin. Servs.*, 98 F. 3d 131; *see Leone*, 257 F.R.D. 343; *see also Nat'l Fin. Servs*, 820 F. Supp. 228; *Degonzague*, 89 F. Supp. 2d 282. Nonetheless, a threat can still convey imminence in the absence of an explicit reference to litigation.

Though other courts have determined that a threat of litigation under § 1692e(5) does not require a showing of imminence, Defendant relies on *Jenkins* to argue that imminence is required. 999 F. Supp. at 1136. Assuming, *arguendo*, that a showing of imminence is required, language warning a consumer that "[t]his is your final opportunity to settle your account" in order to avoid "additional problems" and "appropriate legal measures to obtain payment" was found to cause the unsophisticated consumer to "believe litigation was authorized and imminent." *Clark v. Retrieval Masters Creditors Bureau, Inc.*, 185 F.R.D. 247, 250-51 (N.D. Ill. 1999).

Here, Defendant Harris's letter says, in large, bold-faced letters "RESPOND IMMEDIATELY", and further prompts Plaintiff to "pay[]this debt immediately" to avoid further

9

collection action. The immediacy, paired with conspicuous font, implies further, imminent action in the near future if Plaintiff does not pay. It is not merely a possibility, but an indication that a decision will be made imminently.

### C.    Defendant Harris's Assertion That It Is Not A Law Firm is False

Defendant Harris claims that it is only a collection agency, and not a law firm, and thus it cannot threaten litigation. Defendant claims that Plaintiff mistakenly alleges that Defendant is a law firm. (Dkt. #18, p. 5). While Defendant Harris may be a collection agency, it also has attorneys on staff with the ability to give legal advice and file lawsuits on behalf of its clients.

Regardless of whether any attorney at Harris files lawsuits on behalf of Harris or Harris' clients, Defendant has presented to the public that it has attorneys on staff, and thus, they have the ability to file lawsuits. Defendant Harris' corporate filing with the Illinois Secretary of State, attached to Plaintiff's Complaint as Exhibit A, the president of Harris is Arnold S. Harris. Arnold S. Harris is a registered attorney in the State of Illinois, and his registered business address is the same as Harris' principal place of business. *See* Record from Illinois Attorney Registration and Disciplinary Commission, attached to Plaintiff's Complaint as Exhibit C. Further, according to Harris' own website, Arnold "Arnie" Harris joined Harris in 1986 "as a litigating attorney." *See* Screenshots of Harris' website, attached to Plaintiff's Complaint as Exhibit D. Harris also advertises on its website that it offers litigation services. *See* Exhibit D.

Nonetheless, its contention that it is not a law firm is irrelevant for purposes of § 1692e(5). A collection letter containing a threat of legal action need not be sent directly by an attorney, or be on an attorney's letterhead in order to violate § 1692e(5). In fact, even a letter from an attorney that is not licensed to practice in the state in which the consumer lives can still pursue legal action by retaining local counsel. *See Sturdevant v. Thomas E. Jolas, P.C.*, 942 F. Supp. 426, 430 (W.D. Wisc. 1996) (finding an out-of-state attorney's threat was not a threat that

could not be legally taken because the attorney could retain local counsel); *see also Withers v. Eveland*, 988 F. Supp. 942, 946 (E.D. Va. 1997) (finding that a threat of legal action sent by a non-lawyer constituted a threat to take action that could not legally be taken because the non-lawyer could not file suit).

Defendant also mentions that its letter is not sent on attorney letterhead. Even if Defendant's assertion that it is not an attorney is taken as true, the mere fact that a letter is not on law firm letterhead does not defeat a consumer's § 1692e(5) claim against a non-lawyer, as even a non-lawyer can threaten to take action it cannot legally take or does not intend to take. *Veillard v. Mednick*, 24 F. Supp. 2d 863, 867 (N.D. Ill. 1998) (holding that the letterhead of a collection letter is not determinative for § 1692e(5) purposes).

III.    **Plaintiff Has Not Alleged that Defendant Harris Violated the EFTA, Rather, Plaintiff Has Alleged that Defendant Harris Made a Misrepresentation With Respect to Plaintiff's Rights Under the EFTA**

Defendant Harris misinterprets Plaintiff's allegations to determine that "Plaintiff incorrectly seeks to apply an obsolete regulation that applied only to financial institutions onto H&H." (Dkt. #18, p. 9). Defendant Harris explains how it is not a financial institution, and that the EFTA only applies to financial institutions, such as banks, savings associations or credit unions. (Dkt. #18, p. 10).

However, Plaintiff has not brought a claim under the EFTA, and has not alleged that Defendant Harris in any way violated the EFTA. Instead, Plaintiff has brought all her claims solely under the FDCPA, which does apply to debt collectors like Defendant Harris. Plaintiff's claims under §§ 1692e and 1692f with respect to the EFTA state that Defendant Harris "misstated Plaintiff's right to cancel an Electronic Payment Authorization," and "inaccurately limited its instructions to Plaintiff about how she could cancel an Electronic Payment Authorization." (Dkt. #1, Complaint, ¶¶ 46, 48). Plaintiff merely included the language of the

11

EFTA in her Complaint to compare the EFTA language with the language used in Defendant

Harris' letter.

Plaintiff is not attempting to apply the EFTA to Defendant Harris, but has alleged that

Defendant Harris misstated her rights under the EFTA. Harris could have accurately stated

Plaintiff's rights, or simply not included the information at all, as it is not required to. Instead,

Harris confused Plaintiff, and the unsophisticated consumer. Thus, Defendant Harris has violated

§§ 1692e, 1692e(10), and 1692f by making a materially false statement and using unfair means

to attempt to collect a debt when it misstated Plaintiff's rights.[1]

### CONCLUSION

For the reasons stated, Defendant's motion to dismiss should be denied or Plaintiff should

be permitted to amend her complaint accordingly.

Respectfully Submitted,

By: s/*Celetha Chatman*
One of Plaintiff's Attorneys

---

[1] Defendant inserts a footnote indicating that Plaintiff has not suffered any injury as a result of the letter because she never made a payment. (Dkt. #18, p. 8, FN3). However, Plaintiff need not make a payment, or schedule a payment, in order to suffer an injury under the FDCPA. *Spokeo* expressly states that "the violation of a procedural right granted by statute *can* be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo, Inc. v. Robsin*, 136 S. Ct. 1540, 1544 (2016) (first italics added). Indeed, *Spokeo* describes the required injury as "an invasion of a legally protected interest…" *Id.* at 1548, *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A violation of a plaintiff's substantive FDCPA rights or other statutory rights is itself a concrete injury. *See Quinn v. Specialized Loan Servicing*, 2016 U.S. Dist. LEXIS 107299 at *11 (N.D. Ill. Aug. 11, 2016) ("a number of courts have already confronted *Spokeo*-based standing challenges in FDCPA cases and have rejected the argument that SLS asserts here."); *Dickens v. GC Services Limited Partnership,* Case No., 2016 WL 3917530 (M.D. Fla., July 20, 2016) (FDCPA case holding that "an alleged failure to comply with a federal law,'…. 'may indeed be enough to confer standing. *Spokeo* in no way stands for the proposition that it is not.'); *Lane v. Bayview Loan Serv., LLC*, 2016 U.S. Dist. LEXIS 89258 (N.D. Ill. July 11, 2016) (FDCPA case holding that "[w]hen a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit." Lane at pg. 7); *Prindle v. Carrington Mortg. Servs., LLC*, 2016 U.S. Dist. LEXIS 108386 at *31 (M.D. Fla. Aug. 16, 2016) ("As the object of allegedly false, deceptive, and/or misleading representations in connection with the collection of a debt, Prindle has alleged that she 'has suffered injury in precisely the form the [FDCPA] was intended to guard against.'") (quoting *Havens Realty*, 455 U.S. at 374). Thus, Defendant's misrepresentations and unfair means to attempt to collect a debt, in violation of §§ 1692e and 1692f, constitute violations of Plaintiff's substantive rights – an injury – and thus, Plaintiff need not have made a payment.

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 502
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com

## CERTIFICATE OF SERVICE

I, Celetha C. Chatman, an attorney, hereby certify that on December 22, 2016, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: December 22, 2016**                                                      Respectfully submitted,


                                                                          By:  ___/s/ *Celetha C. Chatman*